IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>LLENOC REAL ESTATE, LLC,<br><br>Debtor. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:10-CV-01069<br><br>Judge Clark Waddoups |

## <u>INTRODUCTION</u>

Appellant Bank of the West (the "Bank") challenges the judgment of the bankruptcy court to allow Appellee Jed Connell's ("Mr. Connell") claim for services rendered to Llennoc Real Estate, LLC ("Llennoc" or "Debtor") in the amount of $160,151.00. The Bank raises three issues on appeal: (1) whether the bankruptcy court applied an erroneous standard in allowing Mr. Connell's claim; (2) whether the bankruptcy court erred in allowing extrinsic evidence to determine whether Mr. Connell's parents signed on behalf of the Debtor, thereby permitting Mr. Connell's claim based on the Management and Compensation Agreement Between Jed Connell and Edward Connell, Faye Connell, Llennoc Real Estate, LLC, and Llennoc Enterprises, LLC (the "Agreement"); and (3) whether the bankruptcy court erred by allowing Mr. Connell's claim in an amount higher than what was listed in Debtor's Statements and Schedules. The court finds for Mr. Connell on all claims and upholds the bankruptcy court's judgment in its entirety.

## BACKGROUND

Llennoc was organized as a Utah limited liability company on January 14, 2003.  As part of its business operations, Llennoc managed a 52,000 square foot facility that included recreation equipment and food establishments.  Mr. Connell was a pre-petition manager for Llennoc from December 2001 through September 2004.  Mr. Connell's parents, Edward and Faye Connell, also held management positions.  On September 7, 2004, Mr. Connell and his parents signed the Agreement, which lists the compensation and reimbursements to be paid to Mr. Connell.  The Agreement does not state the capacity in which Edward and Faye Connell signed.

Llennoc filed for Voluntary Petition under Chapter 11 on April 10, 2006.  Mr. Connell submitted a claim (the "Claim") to Llennoc's estate for unpaid salary, fees, and expenses in the amount of $158,354.76.  (Dkt. No. 17, 84.)  The Claim was listed on Llennoc's schedule G ("Schedule") as an executory contract that was undisputed, non-contingent and liquidated pursuant to §1111(a).  The bankruptcy Trustee did not object to the Claim, and the Claim was deemed filed pursuant to § 501.  The Bank, a secured creditor and party in interest, filed an objection to the Claim.  After an evidentiary hearing on the matter, the bankruptcy court granted the Claim in the amount of $160,151.00.[1]  In doing so, the bankruptcy court concluded that Edward and Faye Connell signed the Agreement as representatives of Llennoc despite not being expressly identified as such.

## STANDARD OF REVIEW

The court reviews "legal determinations by the bankruptcy court *de novo*, while [it] reviews factual findings under the clearly erroneous standard."  *Osborn v. Durant Bank Trust Co.*, 24 F.3d 1199, 1203 (10th Cir. 1994).

---

[1] The bankruptcy court accepted evidence that the claim was $1,796.24 larger than the amount listed on the schedules at the beginning of the bankruptcy action.

As the standard of review relates to the Agreement, the first question is whether it is ambiguous. The Tenth Circuit has definitively stated: "Ambiguity is a question of law." *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 832 (10th Cir. 2005). Thus, the court must first "decide[] whether there is anything for the trier of fact to find." *Id.* If the court were to find that ambiguity exists, findings of fact are entitled to the clearly erroneous standard. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 829. "However, when a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to de novo review." *Osborn*, 24 F.3d at 1203.

## DISCUSSION

### I.   Mr. Connell's Claim

#### A.   Presumption of Validity Under Rule 3003.

The Bank contends that the bankruptcy court erred in allowing Mr. Connell's claim because it was not filed formally according to Fed. R. Bankr. P. 3001 and 3002, but simply listed in the Debtor's bankruptcy Statement and Schedules and in its Plan of Reorganization. (Appellant Brief, 6)(Dkt. No. 3). The Bank argues that this deficiency – in tandem with its own objection – prevented Mr. Connell's Proof of Claim "any presumption of validity." (Appellant Brief, 14.) The Bank argues that the bankruptcy court thereby erred in not shifting the burden to Mr. Connell to prove his claim. The Bank's argument fails for a number of reasons.

In articulating the governing rules, the Bank cites *In re Kirkland*, 572 F.3d 838 (10th Cir. 2009), which involved a creditor in a Chapter 7 case filing a Proof of Claim related to credit card debt. The creditor had failed to include any supporting documentation along with the Proof of Claim, as required by the official form and Rule 3001. Thus, despite the debtor's Statements and

Schedules, the court found that the creditor had failed to meet its burden to produce evidence and disallowed the claim. *Id.* at 840-41.

Simply said, this is not a Chapter 7 case contingent upon Rules 3001 and 3002. Rather, Proof of Claims in Chapter 11 cases, such as this, fall under Rule 3003, "Filing Proof of Claim or Equity Security Interest in Chapter 9 Municipality or Chapter 11 Reorganization Cases." Regarding the efficacy of Mr. Connell's filing, Rule 3003(b)(1) states:

> The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.

> Fed. R. Bankr. P. 3003(b)(1).

Because no argument is presented that Mr. Connell failed to file the requisite schedule of liabilities, any absence of the Proof of Claim Form (Official Form 10) or other supporting evidence is irrelevant. The bankruptcy court's judgment to afford Mr. Connell's filing a presumption of validity was proper.

The Bank argues further that to allow this presumption where an insider filing the bankruptcy is the same person who is making the claim would invite abuse. That concern, however, is addressed by the ability of creditors to object to the claim and present evidence that the claim is not well-taken. Moreover, as in this case, the claim is subject to review by the trustee who also can object should he conclude there has been abuse by an insider.

## B.   Mr. Connell's Burden of Persuasion

A question remains as to the effect the Bank's objection has on the presumption of validity of the claim and whether some impermissible burden was thereby shifted to the Bank. The parties cite two cases from the Tenth Circuit which appear to have conflicting standards. Mr. Connell has cited *Fullmer v. United States (In re Fullmer)*, where the court required an

objecting party to bring forth evidence of probative force before the burden is shifted back to the creditor.[2]  In contrast, the Bank cites *In re Harrison* for the proposition that an objection alone is enough to require the creditor to carry the burden of persuasion as to the validity and amount of the claim.  The position taken in *Fullmer* was subsequently questioned by the Supreme Court in *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000).[3]  The court finds, therefore, that *In re Harrison*, 987 F.2d 677 (10th Cir. 1993), controls.   In *Harrison*, the Tenth Circuit stated:

> A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. A proof of claim is the creditor's statement as to the amount and character of the claim. It is deemed allowed absent objection. In short, a proper claim timely filed stands, absent objection.  If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.

> 987 F.2d at 680 (citations omitted).

Thus, although the Bank may proffer evidence to undermine Mr. Connell's claim, the "ultimate burden of persuasion" still remains with Mr. Connell.

In his brief, Mr. Connell has outlined his evidence regarding the legitimacy of the underlying claim, as presented to the bankruptcy court.  (Appellee Brief, 15-23)(Dkt. No. 8).  The Bank curiously concludes that Mr. Connell's claim simply "had no supporting evidence." (Appellant Reply, 7)(Dkt. No. 12).  Rather than respond to the evidentiary claims directly, the

---

[2]      "A properly filed proof of claim is prima facie evidence of the validity and amount of the claim.  This evidentiary presumption remains in force even though an objection to the claim is filed by a party in interest.  To overcome this prima facie effect, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim. Only then is the ultimate burden of persuasion with the proponent of the proof of claim." *Fullmer v. United States (In Re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir. 1992) (citations omitted).
[3]      *Raleigh* involved a split among the Circuits on the issue of whether the burden of proof on a state tax claim in bankruptcy court should be placed on the trustee or on the taxpayer.  The Court explicitly accepted the interpretation of the Third, Fourth, and Seventh Circuits, and explicitly rejected the theory of the Fifth, Eighth, Ninth, and Tenth Circuits, which included by name, *In re Fullmer.  Raleigh*, 530 U.S. at 20.  The Court held:
> Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.  The basic federal rule in bankruptcy is that state law governs the substance of claims . . . Congress having generally left the determination of property rights in assets of a bankrupt's estate to state law.
> *Id.*

Bank argues that its own evidence as "presented" to the bankruptcy court "easily overcame whatever *prima facie* effect the scheduled claim may have had."  (Appellant Reply, 7.)  The court finds the Bank's "evidence" unpersuasive.

The Bank argues that it presented documentation to the bankruptcy court showing that Edward and Faye Connell were not listed as managers of the Debtor, and "the dates in which the Debtor and another entity were established."  (Dkt. No. 12, 7), (Appellant App., 202, 205, 268-73, 276-77) (Dkt. No. 5).  The evidence does not support the Bank's argument.  First, Exhibit A, although technically "presented" to the court, was not received.  (Appellant App., 205).[4]  Second, evidence of the dates in which the Debtor was "established" was not before the court.  In fact, the bankruptcy court explicitly received Exhibits C and D for the purpose of showing the date of registration and not for the purpose of demonstrating when the entity came into legal being.  (Appellant App., 271-73.)  In any event, the Bank fails to make any argument as to how this "evidence" was pertinent to undermining Mr. Connell's claim.  *See* (Appellant Reply, 7.)[5]

Assuming that the Bank actually presented admissible evidence that tended to undermine Mr. Connell's Claim, the question now is whether the bankruptcy court's judgment in receiving the Claim was clearly erroneous.  *See Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (noting that a finding of fact is not clearly erroneous unless the court, after a review of all the evidence, "is left with a definite and firm conviction that a mistake has been made.").  The Bank offers two such arguments.  First, is the notion that Mr. Connell's self-serving testimony is inadmissible under *Peterson v. Kennard*, 2008 UT 90, 201 P.3d 956.  For the reasons articulated *infra*, page 11, the court rejects this argument.  Second, the Bank argues that "a claim that is filed

---

[4]    The citation by the Bank in support of its argument is to the page in the transcript where the bankruptcy court rejected receiving Exhibit A into evidence.  The Bank fails to cite to any part of the transcript where Exhibit A was later received into evidence.

[5]    Exhibit 9 – the Agreement, will be considered in the following section.

by an 'insider' of the Debtor . . . should not enjoy the same evidentiary presumptions as a formal proof of claim that complies with Rule 3001 and conforms to Official Form 10." (Appellant Brief, 14.)  Insofar as the filing was appropriate under the Bankruptcy Rules, and the Bank fails to provide any case law to bolster this notion, the contention is rejected.  *See* (Appellant Brief, 14).

Without any other evidence, allegation, or argument before the court that suggests that these explanations were unbelievable, there is no reason for this court to overturn the bankruptcy court's judgment.  Nor can it be said that the bankruptcy court shifted some burden impermissibly to the Bank.  Inasmuch as Mr. Connell had presented evidence sufficient to meet his burden of persuasion, it was the Bank's prerogative to undermine that evidence if it so desired.  It failed to do so, meaning Mr. Connell's persuasive evidence stood unchallenged.  As such, the court finds that the bankruptcy court's judgment was not clearly erroneous.

## II.   <u>The Agreement</u>

### A.   **Facial Ambiguity**

The controlling document in this litigation is the Agreement, signed by three persons: Jed Connell, Edward Connell, and Faye Connell.  (Appellant App., 333)(Dkt. No. 5).  Because the Agreement does not specify the capacity in which Edward and Faye Connell were acting when they signed the document, the Bank argues that the signings were presumptively in their personal capacities and not on behalf of Llennoc.  The Bank further contends that the bankruptcy court erred in permitting extrinsic evidence – Mr. Connell's uncontroverted testimony – to clarify whether Edward and Faye Connell signed the Agreement as representatives of Llennoc.  (Appellant Brief, 19) (Dkt. No. 3).  Although the bankruptcy court did not explicitly rule that the Agreement was ambiguous as to the capacity in which Edward and Faye Connell signed, it may be inferred in that the bankruptcy court considered Mr. Connell's uncontroverted testimony in

interpreting the Agreement. *See* (Appellant App., 155). Because "contractual ambiguity presents a question of law," the court reviews the bankruptcy court's implied conclusion that the Agreement was ambiguous under the *de novo* standard. *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 832 (10th Cir. 2005).

The Bank argues that it is "well-established under Utah law that if it is not clear whether a contract was signed in an individual or representative capacity, then it was signed in an individual capacity, making the individual personally liable." (Dkt. No. 3, 17.) The Bank cites two cases to support this proposition, *Anderson v. Gardner*, 647 P.2d 3, 4 (Utah 1982) and *DBL Distrib., Inc. v. 1 Cache, LLC*, 147 P.3d 478, 481 (Utah Ct. App. 2006). *Anderson* concerns a service contract between Mr. Gardner and Mr. Anderson, a western performer, for services in exchange for monetary compensation. *Anderson*, 647 P.2d at 3-4. The question before the court was whether Mr. Gardner signed the agreement personally, or whether "KMOR RADIO" was responsible for the contract.[6] Ultimately, the court held that an authorized representative who signs his name to an agreement is "personally obligated if the [agreement] neither names the person represented nor shows that the representative signed in a representative capacity."[7] *Id.* at 5. This is not the case here. The Agreement explicitly lists Jed, Edward, and Faye Connell, as well as Llennoc Real Estate, LLC and Lllennoc Enterprises, LLC. Thus, the entities are "named" parties to the agreement, despite the capacity of the signers to the document being unclear. And, because *Anderson* fails to address this factual scenario, it is inapposite.

---

[6] The court noted that on the line marked "Employer's name" was written "Mr. Jay Gardner – KMOR RADIO." *Anderson*, 647 P.2d at 4. The court found this ambiguous, "perhaps signifying an entity that was co-obligor or sole obligor or perhaps merely identifying defendant's affiliation or location." *Id.* In the end, this ambiguity was meaningless because KMOR Radio was neither a corporation nor a registered dba. *Id.* Indeed, there was no other person or entity to be liable on the contract other than the defendant, Mr. Gardner.

[7] The court rejects the Bank's attempt to limit facial ambiguity to a reading of the signature line. (Dkt. No. 3, 18.) Such an interpretation is not consistent with Utah's general contractual construction, as outlined in *Daines*.

Similarly, the Bank contends that *DBL Distrib., Inc.* stands for the proposition that an individual failing to "limit their signature to their corporate capacity [should be held] directly liable on corporate instruments. *DBL Distrib., Inc. v. 1 Cache, LLC*, 2006 UT App 400, ¶13, 147 P.3d 478.  For support, the Utah Court of Appeals cited *Anderson v. Gardner*, 647 P.2d 3, 4-5 (Utah 1982) to state in dicta that "corporate officers liable on promissory note where they failed to signify their corporate capacity in their signatures." *Anderson*, at ¶13.  As noted above, this is an over simplification of *Anderson*.  Furthermore, the agreement in *DBL Distributing, Inc.* contained "unambiguous language of personal guarantee." *DBL Distrib.*, 2006 UT App 400, ¶ 18.  There was no ambiguity.  As such, the case is unhelpful in its recitation of the law and inapposite on its facts.

In setting forth the standard for adjudicating differing interpretations in a contract, the Utah Supreme Court in *Daines* has stated:

> [C]ontractual ambiguity can occur in two different contexts: (1) facial ambiguity with regard to the language of the contract and (2) ambiguity with regard to the intent of the contracting parties.  The first context presents a question of law to be determined by the judge.  The second context presents a question of fact where, if the judge determines that the contract is facially ambiguous, parol evidence of the parties intentions should be admitted.

*Daines  v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (citations omitted).

The Supreme Court of Utah has found that a contractual term or provision is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 (citation omitted).  The court has further found that "[i]n addition to finding ambiguity in the express terms of a release, we have also found ambiguity in a contract taken as a whole; where there are missing terms in a contract; and in the parties' course of conduct." *Daines*, 2008 UT 51, ¶ 29 (citations omitted).

9

Looking at the contract in whole, the court first notes that the Agreement is stated to be between "Jed Connell and Edward Connell, Faye Connell, Llennoc Real Estate, LLC, and Llennoc Enterprises, LLC." (Appellant App., 333)(Dkt. No. 5).  The signature lines of the Agreement only contain the names and signature of Edward Connell, Faye Connell, and Jed Connell.  *Id.* at 335.  Due to the fact that every signatory line was filled, it appears that all anticipated parties were actually represented and thereby bound to the contract.  However, there is no mention of any individual or corporate capacity of these individuals in the Agreement.  Although the bankruptcy court did not explicitly find ambiguity, the court now holds that because of the inconsistencies of the Agreement on its express terms, a facial ambiguity exists regarding the representative capacities of Edward Connell and Faye Connell.[8]  "[I]f the judge determines that the contract is facially ambiguous, parol evidence of the parties' intentions should be admitted." *Daines*, 2008 UT 51, ¶ 25.  Thus, the bankruptcy court's admission of parol evidence was permissible.

### B.    The Factual Determination

Where the court has held the Agreement ambiguous, the court now decides whether the bankruptcy court's judgment regarding the representative capacity of the signers was clearly erroneous.  As stated, Mr. Connell proffered his own testimony before the court as well as several witnesses, whom together explained the structure of the organization.  Based on those testimonies, the bankruptcy court concluded that "Connell's parents signed the Agreement as representatives of the Debtor, despite not being expressly identified as such."  (Appellant App.,

---

[8]      The Bank argues that the bankruptcy court erred in permitting extrinsic evidence to determine the intent of the parties.  It is worth noting that this characterization under *Daines* is not wholly accurate.  *Daines* uses the term "extrinsic evidence" for evidence offered in the rare instance "where contractual terms are subject to alternative interpretations based on usage."  *Daines*, 2008 UT 51, n 5.  Once the term is properly understood, the "better-reasoned" approach is used to determine whether there are "competing interpretations [that] are reasonably supported by the language of the contract."  *Id.* at ¶ 31.  If so, there is ambiguity and parol evidence is then permissible.

154)(Dkt. No. 5).  The Bank challenges this finding based on several cases, which are distinguished below.

The Bank cites *Peterson v. Kennard*, 2008 UT 90, ¶ 24, 201 P.3d 956 for the proposition that "self-serving testimony, alone, is insufficient to carry the burden of proof."  (Appellant Brief, 20)(Dkt. No. 3).  *Peterson* involved a criminal defendant who was challenging a waiver of his right to counsel.  In contrast to the Bank's argument that "self-serving testimony was not enough to carry burden of proof by a preponderance of the evidence," the *Peterson* court held differently.  Indeed, the court noted that the self-serving testimony *was* sufficient to meet the defendant's burden.  *Peterson v. Kennard*, 2008 UT 90, ¶ 30.  Rather, the court simply held that the testimony in this instance was insufficient because it was "unbelievable," and not because it was self-serving.  *Id.*  The Bank's use of *Peterson* is rejected as inapposite.

The Bank's reliance on *Glauser Storage, LCC v. Smedley*, 2001 UT App 141, 27 P.3d 565 and *Parks Enters, Inc. v. New Century Realty, Inc.*, 652 P.2d 918, 920 (Utah 1982) are likewise rejected.  In *Glauser Storage*, the Court of Appeals held that the "trial court was in the best position to judge Smedley's credibility and was free to disbelieve him."  *Glauser Storage*, 2001 UT App 141, ¶ 27.  This says nothing of the present case and whether the bankruptcy court was not free to give credence to such testimony.  The Bank has failed to make its point.

In *Parks Enterprises, Inc.*, the Utah Supreme Court states that it is settled law that "a contract will be construed against its drafter."  *Parks*, 652 P.2d at 920.  Although true, it is important to realize that such construction is applicable only after "the extrinsic evidence was insufficient to determine the intent of the parties."  *Edwards & Daniels Architects v. Farmers' Prop.*, 865 P.2d 1382, 1386 (Utah Ct. App. 1993).  That is not the case here.  Furthermore, in such a case where the Bank has failed to provide any meaningful analysis of *In Parks Enterprises, Inc.*, the court will refrain from extending such a broad statement to the facts of this

case. *See* (Appellant Reply, 13)(Dkt. No. 12). Indeed, it makes little sense that the drafter of a document should, as a matter of course, be held to suffer the consequences of a document poorly signed by the opposing party, in such a case that the contract is later challenged by a third-party creditor whom was never a contemplated party in the first instance.

Lastly, the Bank argues that although Mr. Connell testified as to his intent, his intent is not at issue. (Appellant Reply, 13.) The Bank, however, points to nothing in the record to support this assertion.[9]

It is worth noting that the Bank has failed to address the other important evidence relied upon by the bankruptcy court, that being the Agreement itself. The bankruptcy court stated:

> The text of the Agreement references and makes the debtor a party thereto, a textual reference which makes no sense absent an understanding that the Debtor was a party to be bound by the Agreement. The Agreement states that the Debtor was a party to the Agreement and the terms of the Agreement, show that the Debtor, not Connell's parents, primarily was the beneficiary of the duties which Connell undertook under the Agreement.

(Appellant App., 154)(Dkt. No. 5).

Thus, even if the court rejected Mr. Connell's testimony, the Bank has failed to articulate why the bankruptcy court's reliance upon the Agreement is clearly erroneous.

Although a reasonable court weighing the credibility of the witnesses and strength of the evidence could have found for the Bank in the bankruptcy proceeding, this court does not have the "definite and firm conviction that a mistake has been committed." *See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 829 (10th Cir. 2005). As such, the court upholds the bankruptcy court's determination that Edward and Faye Connell signed the Agreement in their official representative capacities.

---

[9]     Mr. Connell testified simply that "[his father] signed as manager." (Appellant App., 276)(Dkt. No. 5). The Bank failed to challenge this testimony either on cross-examination or the presentation of contradictory evidence.

**III.**   **Jed Connell's Claim in the Amount of $160,151**

The Bank argues that the bankruptcy court erred by awarding Mr. Connell $160,151.00 in that the amount listed in the Debtor's Schedules was $158,354.76.  (Appellant Brief, 20)(Dkt. No. 3).  Mr. Connell argues that the Bank did not present this issue to the bankruptcy court. (Appellee Brief, 28)(Dkt. No. 8).  Indeed, the Tenth Circuit requires a party "to articulate a reason for [an appellate court] to depart from the general rule that 'a federal appellate court does not consider an issue not passed upon below.'" *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).  Because the Bank has failed to rebut this charge and nothing appears to contradict it, the Bank's claim fails.

## CONCLUSION

For the foregoing reasons, the court DENIES the Bank's appeal and awards judgment in favor of Appellee Jed Connell on all claims, with the parties to bear their own costs.

DATED this 10th day of November, 2011.


BY THE COURT:


Clark Waddoups
United States District Judge